WILLIAM B. STARLING, JR. AND WIFE, PATRICIA D. STARLING v. WALTON H. SPROLES AND WIFE, JANICE S. SPROLES, HAROLD L. PARKER AND WIFE, JOANNE S. PARKER AND HAROLD L. PARKER T/D/B/A HAROLD PARKER REALTY COMPANY

No. 835DC179

(Filed 17 July 1984)

**Contracts §§ 29, 29.4— conveyance of house—assumable loan—interest rate— measure of damages—mitigation**

　　In an action to recover damages for breach of warranty and breach of contract to convey real property where plaintiffs contended that defendants contracted to sell them a house with an assumable loan of 8¾% but the interest rate was in fact 9½%, the trial court applied the appropriate measure of damages, which was the present value of the difference over the term of the loan between the 8¾% interest rate and the 9½% interest rate; furthermore, plaintiffs' conduct in contacting defendant numerous times in an attempt to work out the change in the interest rate amounted to an adequate attempt to mitigate their damages.

APPEAL by defendants from *Lambeth, Judge.* Judgment entered 7 October 1982 in District Court, NEW HANOVER County. Heard in the Court of Appeals 18 January 1984.

This is an action for damages for breach of warranty and breach of contract to convey real property. The alleged breach concerned a provision in the real estate contract stating that the

interest rate of an assumable loan secured by a Deed of Trust on the subject property was 8¾%. Several months after the conveyance to the plaintiffs of the real property by the defendants Harold L. Parker and wife, Joanne S. Parker, and the Harold Parker Realty Company, the plaintiffs learned that the interest rate on the loan for their property was not in fact 8¾%, but was 9½% per annum. Plaintiffs, William B. Starling and wife, Patricia D. Starling, subsequently instituted this action against defendants seeking, *inter alia*, recovery of the sum of $15,000 as damages for breach of contract or breach of warranty.

The matter was heard before the District Court Judge sitting without a jury. Extensive findings of fact were made by the trial court, which, in summary, show the following events to have occurred: In January, 1978, the plaintiffs contacted L. H. "Bill" Taylor, an agent for defendant Harold Parker Realty Company, regarding a house located at 334 Scottsdale Drive advertised for sale by the defendant realty company. Plaintiffs informed Taylor that they needed a home which fit several criteria, including a price range of $35,000 to $45,000; an assumable loan of less than 9%; 1,500 to 2,000 square feet in size; and having a down payment of less than $13,000. Plaintiffs looked at other houses but did not make an offer to purchase because the interest rates were higher than 8¾%.

On 15 January 1978, the plaintiffs made an offer "to purchase the property located at 334 Scottsdale Drive," and agreed "to pay for said property the sum of $40,500," to be paid in the following manner: $500 in earnest money; $5,400 at closing; and "$34,600, the balance of the purchase price to be financed on the following basis: Approx. Assumption of existing 8¾% loan with PS&L [Peoples Savings & Loan Association]. Payments of approx. $351 per month."

Plaintiffs' offer to purchase was accepted on 16 January 1978, by defendant Harold L. Parker, for defendants Walton H. Sproles and wife, Janice S. Sproles, the then owners of the subject real property. The transfer was completed by the recording of the Deed from the defendants Parker to the plaintiffs for the property located at 334 Scottsdale Drive, on 26 January 1978.

Previously, on 28 March 1977, the defendants, Mr. and Mrs. Sproles, had entered into an agreement with Peoples Savings &

Loan Association (PS&L) whereby the interest rate on their loan with PS&L, secured by a Deed of Trust on the subject property, would be lowered from 9½% to 8¾%, with PS&L reserving the right to raise the interest rate back up to as high as 9½%. The agreement was made so that the Sproles could benefit from a lower rate while interest rates in general were at a reduced level at that time.

Agents for the Harold Parker Realty Company had knowledge of the agreement between the defendant Sproles and PS&L prior to the plaintiffs being shown the house. However, the plaintiffs were not informed of the agreement and the potential problem with maintaining the 8¾% interest rate until plaintiffs received a letter from PS&L dated 28 April 1978, informing them of the agreement and notifying them that the interest rate would initially be increased to 9%. The letter also informed the plaintiffs that the original interest rate on the loan was 9½% and that their new rate of 9% would become effective on 1 June 1978.

The plaintiff, Patricia D. Starling, called L. H. "Bill" Taylor on several occasions following receipt of the 28 April 1978 letter from PS&L. Mrs. Starling asked that Taylor look into the problem of the interest rate, since the offer to purchase contract provided for an 8¾% interest rate on the assumable loan.

On or about 21 July 1978, plaintiffs received a second letter from PS&L, dated 21 July 1978, informing them that the interest rate charged on their loan was to be increased to 9½%. The effective date of the increase from 9% to 9½% was to be 1 September 1978.

Mrs. Sproles had continued to contact Taylor on several occasions during the three month period following receipt of the April, 1978 letter from PS&L, and continued to discuss the problem with Taylor as late as 1979, when both were then employed at North State Realty. Mrs. Starling was assured by Taylor that he would look into the matter of the interest rate and, upon later phone calls, Taylor assured the plaintiff that he would take care of the problem with the interest rate. During the time period when Taylor was still an agent of the Harold Parker Realty Company, no action was taken by him and no one from that company contacted plaintiffs about the problem. The interest rate then re-

mained at 9½%. For financial reasons, the plaintiffs chose to remain in the house located at 334 Scottsdale Drive.

Plaintiffs' evidence of damages was offered through Thomas Burke, a statistician and Professor of Economics at the University of North Carolina at Wilmington. Burke testified to the economic loss to the plaintiffs based on an interest rate difference between 8¾% and 9½% over the term of the loan. Burke computed the loss to the plaintiffs over the term of the loan to be the result of the difference in interest rates, then discounted that figure to a present value. The trial court relied upon Burke's computations in awarding damages to the plaintiffs against the defendants Parker.

The defendants' own witness on the issue of damages testified that the value of the property itself would not be affected by a change in the interest rate from 8¾% to 9½%, but conceded that the costs of purchasing the home would be affected by such an increase in interest rates. Further, that a house with an assumable loan at 8¾% would be more desirable to a prospective buyer than a house with an assumable loan at 9% interest.

Judgment was entered for the plaintiffs as against the defendants Parker and Parker Realty Company, from which the defendants Parker and Parker Realty Company (hereinafter "defendants Parker") have appealed.

*Marshall, Williams, Gorham & Brawley, by Lonnie B. Williams, for defendant appellants.*

*J. H. Corpening, II, for plaintiff appellees.*

JOHNSON, Judge.

The primary issue presented by this appeal is whether the trial court applied the appropriate measure of damages for the breach of contract to convey real property which included a provision governing the interest rate payable on the assumable loan covering the property. The defendants Parker contend that the contract involved was a simple contract to convey real estate and that the damages, if any, should be awarded under the rule of *Lane v. Coe*, 262 N.C. 8, 136 S.E. 2d 269 (1964) and *Johnson v. Insurance Co.*, 219 N.C. 445, 14 S.E. 2d 405 (1941). That measure is basically the difference between the contract price and the mar-

ket value of the land. Plaintiffs, on the other hand, contend that the method for computing damages when the breach of contract results in a change in interest rate set forth in *Pipkin v. Thomas & Hill, Inc.*, 298 N.C. 278, 258 S.E. 2d 778 (1979), and applied by the trial court herein, is the only measure of damages which will provide adequate relief under the circumstances of this case. We agree.

As the plaintiffs noted in their brief, the issue is one of first impression in this jurisdiction. However, we may be guided in its resolution by general principles of contract law. The general rule for the measure of damages for a breach of contract "is the amount which will compensate the injured party for the loss which fulfillment of the promise could have prevented or the breach of it entailed, so that the parties may be placed as nearly as may be in the same monetary condition that they would have occupied had the contract not been breached." 3 Strong's N.C. Index 3rd, Contracts, § 29.2, *citing Perfecting Service Company v. Product Development and Sales Co.*, 259 N.C. 400, 131 S.E. 2d 9 (1963); *Childress v. C. W. Myers Trading Post, Inc.*, 247 N.C. 150, 100 S.E. 2d 391 (1957).

The general rule that has been applied to determine damages recoverable for the breach of a real estate contract is as follows: "[T]he damages recoverable for breach of contract by the vendor to convey real estate are only such as may fairly and reasonably be well considered as arising naturally — that is, according to the usual course of things — from such breach, or such as may reasonably be supposed to have been in the contemplation of both parties at the time they made the contract, as a probable result of the breach. The loss of the vendee's bargain is assessed upon the basis either of the difference between the contract price and the actual value of the land, or the actual value of the land less the amount, if any, remaining unpaid on the contract price. . . ." *Johnson v. Insurance Co., supra*, at 449-450, 14 S.E. 2d at 407. "The measure of damages for breach of contract to convey land is the difference between the contract price and the market value of the land." *Lane v. Coe, supra*, at 15, 136 S.E. 2d at 275.

In *Pipkin v. Thomas & Hill, Inc., supra*, the court first observed that a borrower's claim for damages resulting from a lender's breach of contract to lend money is "primarily cir-

cumscribed by the rule of *Hadley v. Baxendale*, 156 Eng. Rep. 145, 151 (Ex. 1854)," and then summarized the following general principles of recovery:

> This rule limits generally the recovery of damages in actions for breach of contract. To recover, a disappointed borrower must not only prove his damages with reasonable certainty, he must also show that they resulted naturally — according to the usual course of things — from the breach or that, at the time the contract was made, such damages were in the contemplation of the parties as a probable result of the breach. Additionally, the borrower must demonstrate that, upon the lender's breach, he minimized his damages by securing the money elsewhere if available. When alternative funds are unavailable, however, the borrower may recover the damages actually incurred because of the breach, subject to the general rules of foreseeability and certainty of proof. (Citations omitted.)

298 N.C. at 284, 258 S.E. 2d at 783. The court then quoted the following formulation of the rule governing the applicable measure of damages from the Restatement of Contracts § 343 (1932):

> Damages for breach of a contract to lend money are measured by the cost of obtaining the use of money during the agreed period of credit, less interest at the rate provided in the contract, plus compensation for other unavoidable harm that the defendant had reason to foresee when the contract was made.

298 N.C. at 285, 258 S.E. 2d at 783. The *Pipkin* court concluded that the measure of damages for a breach of contract to borrow money is the present value of the difference between the interest payments owed at the interest rate specified in the contract, and the interest payments actually owed as a result in the breach.

Clearly, the rule of *Johnson* and *Lane* does not properly fit the factual situation in the case under discussion. *Johnson* and *Lane* each involve a failure to convey the real property which was the subject of the contract to convey. In such cases it is entirely appropriate that the measure of damages would be the difference between the contract price and the actual or market value of the property. That is because the use of this measure of damages

when there is a failure to convey property restores the aggrieved party with the "benefit of the bargain," and places the parties in the same position monetarily as they were in prior to the breach. To apply such a measure in the instant case would overlook the nature of the breach and the result of the breach of contract on the plaintiffs' monetary position.

Defendants Parker primarily argue that *Pipkin* is inapposite, but that if the *Pipkin* rule controls at all, the plaintiffs may not recover because they failed to demonstrate that upon the lender's breach, they minimized their damages by securing the money elsewhere, if available. We disagree with both contentions.

The common thread in cases determining the measure of damages upon the breach of any type of contract is the goal of placing the parties in the same monetary position they would have been in had the contract not been breached. In this case, the breach involved a change in the interest rate on the loan from the 8¾% rate which was set out in the real estate contract to the higher rate of 9½% per annum. A change in the interest rate on the loan does not fully affect a party at one time, but rather continues to affect a party over the entire term of the loan during which the change in interest is in effect. The damage to plaintiffs here arises from the additional costs of purchasing the home over the term of the loan. In order to return plaintiffs to the promised monetary position, the court must look to the change in the interest rate and the effect of that change over the term of the loan on the plaintiffs.

In *Pipkin*, the court articulated a method for computing damages when the breach of a contract results in a change in interest rate: the appropriate measure is the present value of the difference in the interest rate set out in the contract and the interest rate resulting from the breach of the contract over the term of the loan. The rationale behind the *Pipkin* measure is clearly applicable to the case under discussion.

Plaintiffs unquestionably suffered a foreseeable monetary loss as a result of the breach; they requested and were promised an assumable loan at an 8¾% interest rate and they ultimately received the loan with a 9½% interest rate. Defendants' own witness admitted that the differential in interest rates would affect the cost of money used to purchase the home and, in turn, af-

fect the total purchase price of the home itself. Further, that a house purchasable at 8¾% interest is more attractive to a prospective buyer than a home purchasable at 9½%. Therefore, defendants' own evidence as to damages establishes plaintiffs' loss and lays the foundation to apply the *Pipkin* rationale to measure such loss. By combining the general rule of damages for breach of contract and the rule set out in *Pipkin* for computation of damages when the breach causes a difference in interest rate, the present value of the resulting economic loss of the plaintiffs over the term of the loan can be computed and the plaintiffs placed in essentially the same monetary condition that they would have occupied had the contract not been breached.

Returning to the issue of mitigation of damages, we conclude that plaintiffs' failure to secure an 8¾% loan elsewhere does not stand as a bar to their recovery for defendants' breach. In *Pipkin*, the lending institution itself breached the contract with the plaintiffs. In this case, the breach was occasioned by the actions of the real estate agents in the preparation of the Offer to Purchase contract, and in their failure to disclose the "problem" with the interest rate on the loan which was to be assumed by the plaintiffs. Rather than contact the lender with whom plaintiffs had no direct dealings, the plaintiff, Patricia Starling, on several occasions contacted the real estate agent who handled the sale of the property and by whose contract the 8¾% interest rate was promised. The real estate agent gave plaintiff assurances that the matter would be looked into and then took no action. Although the evidence indicated that residential loans at 8¾% were available during April and May of 1978, it was during these particular months that plaintiffs were attempting to remedy the problem with the interest rate by contacting the agent for Harold Parker Realty Company, and were receiving assurances that it would be looked into. During this period it was the inaction of the defendant realty company's agent, not the inaction of the plaintiffs, that resulted in a failure to obtain favorable refinancing.

The trial court made findings of fact and conclusions of law to the effect that plaintiffs made a sufficient effort to mitigate the damages arising from the breach of warranty contained in the contract by contacting the agent regarding the increase in the interest on the loan. Under the circumstances of this case, we find

no error in the court's findings and ruling on the issue of mitigation.

Plaintiffs' witness, Professor Burke, computed the damage to plaintiffs by determining the difference between the payout over the term of the loan at 8¾% interest and that at 9½% interest rate, and by then discounting that amount to a present value. Based upon these computations, and taking into account the standard deviation, the trial court awarded a judgment for the plaintiffs against the defendants Parker in the sum of $6,200, which was the minimum figure presented by Professor Burke. Defendants Parker do not contest the accuracy of the computations.

Under the facts presented, the findings of the trial court and the general rules of contract law, we conclude that the method of computing plaintiffs' damages was proper and was accurately applied in this case. Accordingly, the plaintiffs are entitled to the damages awarded by the trial court.

Defendants Parker also argue that the conduct of the plaintiffs in contacting L. H. "Bill" Taylor, the real estate agent who handled the sale of the property, and who was an agent of Harold Parker Realty Company, constituted a waiver of the contract term related to the 8¾% interest rate. We need not directly address the issue of waiver, however, because defendants failed to raise this affirmative defense by their pleadings required by law.

It is well established that waiver, or the facts constituting the basis thereof, must be specifically pleaded. *Cantrell v. Woodhill Enterprises, Inc.*, 273 N.C. 490, 160 S.E. 2d 476 (1968). G.S. 1A-1, Rule 8(c) provides that "[i]n a pleading to a preceding pleading, a party shall set forth affirmatively . . . estoppel . . . waiver, and any other matter constituting an avoidance or affirmative defense." This defendants have failed to do, and they may not raise the issue for the first time on appeal.

We have carefully reviewed defendants' remaining assignments of error and find them to be without merit. The trial court applied the appropriate measure of damages in this case, which is the present value of the difference over the term of the loan between the 8¾% interest rate, which was contained in the contract, and the 9½% interest rate, to which the assumable loan was raised. Plaintiffs' conduct in attempting to mitigate their

damages was adequate under the circumstances of this case. Accordingly, the judgment of the trial court is

Affirmed.

Chief Judge VAUGHN and Judge WEBB concur.